FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2005 JUN 20  A 11: 46

LORETTA G. WHYTE
CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| ANTHONY TYRONE STRAUGHTER, SR. | CIVIL ACTION |
| VERSUS | NO. 05-1230 |
| WARDEN JOHN NOWAK | SECTION "N" (2) |

### REPORT AND RECOMMENDATION

Plaintiff, Anthony Tyrone Straughter, Sr., is a convicted inmate currently incarcerated in the Nelson Coleman Correctional Center ("Coleman") in Killona, Louisiana. He filed this complaint pro se and in forma pauperis pursuant to 42 U.S.C. § 1983 against Warden John Nowak. Straughter alleges that while incarcerated in Coleman in 2005, his legal mail has been tampered with and/or not delivered and that he has been subjected to threats by prison authorities in response to his complaints about the mail. He seeks damages. Record Doc. No. 1 (Complaint at ¶ V).

On May 12, 2005, I conducted a telephone conference in this matter. Participating were plaintiff pro se and John Musser IV, counsel for defendant. Plaintiff was sworn and

___ Fee___
___ Proc____
_X_ Ktd_____
___ CtRmDep____
___ Doc. No.____

testified for all purposes permitted by Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985), and its progeny.

## THE RECORD

Straughter testified that he is currently incarcerated based on a conviction on September 28, 2004, for possession of marijuana with intent to distribute for which he is serving an eight-year prison term. He stated that he asserts two kinds of claims in this case, one related to the mishandling by prison officials of his legal mail and a second concerning "verbal threats that I had about the mail from a ranking officer."

In his written submissions, plaintiff asserted that "[m]y mail was not passed out on 2-7-05. Which was Lundi Gras, according to the jail. I had legal mail en route to this facility via priority through the U.S. Postal Service. When I complained about this incident I was told it was a sheriff holiday (sic) and they run mail when they want to. There is no way that the mail should not run according to Federal Guidelines . . . . [T]he legal mail I was waiting on is dealing with a post-conviction relief proceeding that had to be filed within a certain time limit." Record Doc. No. 1 (Complaint at ¶'s IV and V).

Asked to expand upon these written allegations during his testimony, Straughter stated that he had experienced problems with his mail on several occasions. He testified that when he first came to the facility, legal mail from the state Department of Corrections ("DOC") arrived on one occasion around February 10, 2005, and it had

already been opened before delivery to him. He said this mail concerned his "rap sheet" and some complaints he had made about the jail. Straughter clarified that he did in fact receive this mail, but he objected that it had been opened <u>before</u> delivery to him.

As to a second incident concerning his mail, Straughter testified that on February 7, 2005, he was expecting to receive some transcripts from the state court, and when he asked about it he was told that the mail was not being passed out that day because it was a sheriff's holiday. Plaintiff said he had his family contact the main branch of the post office and determined that the post office was open on that date. He testified that he in fact received the transcripts ten (10) days later on February 17, 2005, and they were stamped February 9, 2005. Asked to specify his complaint, Straughter stated that he objected to "the mail not being passed out because they said it was a personal, a sheriff's holiday, and also from one of the ranking officers, he told me they do what they want to do with the mail and just live with it."

Straughter alleged that as a result of not receiving his transcripts until February 17, 2005, "I missed out on, I had to have my transcripts to a lawyer, and I couldn't get them to him . . . because they were sent to me too late . . . because the lawyer said he had to have them in to him by a certain time because he had a bunch of cases he was receiving and when I had my transcripts mailed to me, by me getting them on the 17th, it was too late for me to file with this certain attorney." He testified that the lawyer

needed the transcripts to "start on an appeal for me" concerning the state court charges on which he had been convicted. He clarified that the alleged appeal was not a direct appeal of his conviction but an application for "post-conviction relief because my trial attorney made me give up my appeal rights in order not to get multi-billed." Plaintiff said he did <u>not</u> file his application "because I'm still looking for an attorney. I had searched for a couple of weeks until I found one attorney, and since I was too late for him, I'm still in the process of trying to find an attorney."

Asked if he had any other complaints about particular pieces of mail, plaintiff testified that other pieces of his mail have also been delivered to him after having already been opened. He also complained that a particular piece of mail that he had sent to a "child support officer" had not been delivered. Straughter described the person to whom he had sent this letter as someone who is in charge of keeping track of the child support payments he owes but has not paid. He stated that he sent this child support worker a letter, but she never received it. He said that the letter explained to the worker that he is incarcerated and asked her if his child support obligations continued, even though he was in jail, "because I didn't want my child support to keep going up with me being in jail." Straughter testified that he knows the child support worker did not receive his letter because he spoke to her a week after he sent her the letter and she told him that she had not received it.

Straughter estimated that the letter was sent to the woman sometime in February 2005 and that he spoke to her on the telephone a week or so later. He testified that during the telephone conversation, he told the child support worker that he was incarcerated and also told her what was in his letter. He stated that she told him there was nothing she could do about it and that his child support obligations were continuing, even though he was in jail. Straughter confirmed that during his telephone conversation with the child support worker she answered the questions he had posed in his letter to her.

As to the alleged threats, he identified the officer who made them as Officer Leroy Hunter. He reiterated that when he questioned the officer about the mail not being delivered on February 7, 2005 (Lundi Gras), the officer threatened him by saying that the officers do with the mail whatever they want and that Straughter would just have to live with it.

## ANALYSIS

I.   STANDARDS OF REVIEW

"A federal court may dismiss a claim in forma pauperis 'if satisfied that the action is frivolous or malicious.'" Moore v. McDonald, 30 F.3d 616, 620 (5th Cir. 1994) (quoting former 28 U.S.C. § 1915(d), now incorporated in 28 U.S.C. § 1915(e), as amended). A complaint is frivolous "if it lacks an arguable basis in law or fact." Davis

v. Scott, 157 F.3d 1003, 1005 (5th Cir. 1998); Reeves v. Collins, 27 F.3d 174, 176 (5th Cir. 1994). The law "'accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless.'" Macias v. Raul A. (Unknown), Badge No. 153, 23 F.3d 94, 97 (5th Cir. 1994) (quoting Neitzke v. Williams, 490 U.S. 319, 327 (1989)).

The purpose of a Spears hearing is to dig beneath the conclusional allegations of a pro se complaint, to ascertain exactly what the prisoner alleges occurred and the legal basis of the claims. Spears, 766 F.2d at 180. "[T]he Spears procedure affords the plaintiff an opportunity to verbalize his complaints, in a manner of communication more comfortable to many prisoners." Davis, 157 F.3d at 1005. The information elicited at such an evidentiary hearing is in the nature of an amended complaint or a more definite statement under Fed. R. Civ. P. 12(e). Wilson v. Barrientos, 926 F.2d 480, 481 (5th Cir. 1991); Adams v. Hansen, 906 F.2d 192, 194 (5th Cir. 1990). "Upon development of the actual nature of the complaint, it may also appear that no justiciable basis for a federal claim exists." Spears, 766 F.2d at 182.

The court may make only limited credibility determinations in a Spears hearing, Norton v. Dimazana, 122 F.3d 286, 292 (5th Cir. 1997) (citing Cay v. Estelle, 789 F.2d 318, 326-27 (5th Cir. 1986), overruled on other grounds by Denton v. Hernandez, 504

U.S. 25, 112 S.Ct. 1728 (1992)). "The Court should allow proper cross-examination . . . ."

After a Spears hearing, the complaint may be dismissed as legally frivolous if it lacks an arguable basis in law, Jackson v. Vannoy, 49 F.3d 175, 176-77 (5th Cir. 1995); Moore v. Mabus, 976 F.2d 268, 269 (5th Cir. 1992), or "as factually frivolous only if the facts alleged are 'clearly baseless,' . . . [or] when the facts alleged rise to the level of the irrational or wholly incredible." Id. at 270.

"'A complaint lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist.'" Davis, 157 F.3d at 1005 (quoting McCormick v. Stalder, 105 F.3d 1059, 1061 (5th Cir. 1997)). "When a complaint raises an arguable question of law which the district court ultimately finds is correctly resolved against the plaintiff, dismissal under Rule 12(b)(6) is appropriate; however, dismissal under the section 1915(d) standard is not." Moore, 976 F.2d at 269. A prisoner's in forma pauperis complaint which fails to state a claim may be dismissed sua sponte at any time under 28 U.S.C. § 1915(e)(2) and 42 U.S.C. § 1997e(c)(1).

In this case, plaintiff's complaint may be dismissed under 28 U.S.C. § 1915(e) and 42 U.S.C. § 1997e(c)(1), either as frivolous because it lacks an arguable basis in law or under Rule 12(b)(6) in light of his testimony explaining the factual basis of his claims.

7


Plaintiff's complaint, as amended by his testimony at the <u>Spears</u> hearing, fails to state a cognizable claim of violation of federal constitutional rights, even under the broadest reading.[1]

## II. LEGAL MAIL

Straughter complains that his legal mail has been opened before delivery to him and/or not delivered at all, and/or delayed in delivery. Prisoners have a constitutional right of meaningful access to the courts.[2] <u>Bounds v. Smith</u>, 430 U.S. 817, 821 (1977). An inmate's right of access to the courts may be violated when a prison official tampers with his legal mail. <u>Brewer v. Wilkinson</u>, 3 F.3d 816, 820 (5th Cir. 1993). However, it is <u>not</u> sufficient for a prisoner to establish only that his mail was opened outside of his presence or without his consent. <u>Walker v. Navarro County Jail</u>, 4 F.3d 410, 413 (5th Cir. 1993). Rather, a claim of denial of the right of access to the courts requires an inmate to demonstrate that his position as a litigant has actually been prejudiced by the violation. <u>Eason v. Thaler</u>, 73 F.3d 1322, 1328 (5th Cir. 1996); <u>Walker</u>, 4 F.3d at 413.

---

[1] Pro se civil rights complaints must be broadly construed, <u>Moore</u>, 30 F.3d at 620, and I have broadly construed the complaint in this case.

[2] The Supreme Court has stated that this right of access lies both in the Due Process Clause and the First Amendment. <u>Wolff v. McDonnell</u>, 418 U.S. 539 (1974); <u>California Motor Transp. Co. v. Trucking Unltd.</u>, 404 U.S. 508, 510 (1972).

In Lewis v. Casey, 518 U.S. 343 (1996), the Supreme Court made clear that an inmate must establish actual injury to state a claim for denial of his right of access to the courts. In examining the particular claims of the inmates in the Lewis case, the Court stated that the right of prisoners to access to the courts is the right to "have a reasonably adequate opportunity to file nonfrivolous legal claims challenging their convictions or conditions of confinement." Id. at 356 (emphasis added). A prisoner's constitutional rights with respect to legal mail are not absolute, and a prison practice or regulation may permissibly interfere with an inmate's legal mail if the practice is reasonably related to a legitimate penological interest. Brewer, 3 F.3d at 824; see Jackson v. Cain, 864 F.2d 1235, 1248 (5th Cir. 1989) (reasonableness standard applies to challenges to regulations as well as actions taken by a prison official).

In Brewer, inmates alleged that prison officials had opened incoming and outgoing legal mail and had inspected it for contraband outside their presence.[3] The Fifth Circuit held that "violation of [a] . . . prison regulation requiring that a prisoner be present when his incoming legal mail is opened and inspected is not a violation of a prisoner's constitutional rights" when there is no proof that such tampering was prejudicial to the inmate's access to the courts. Id. at 825 (emphasis added). The Fifth Circuit distin-

---

[3] In Brewer, the plaintiffs did not allege that their ability to transmit or prepare a necessary legal document had been affected or that their mail had been censored.

guished between incoming and outgoing legal mail, noting the differing penological concerns involved. The court stated that the "'implications of outgoing correspondence for prison security are of a categorically lesser magnitude than the implications of incoming materials.'" Id. (quoting Thornburgh v. Abbott, 490 U.S. 401, 413-14 (1989)).

In the present case, Straughter testified that on some occasions his incoming legal mail has been opened outside his presence before delivery to him. Applying the foregoing legal standards, these allegations in no way establish a constitutional violation. Review of Straughter's own testimony establishes that he suffered no legal prejudice of any kind to his position as a litigant as a result of any such incidents. Similarly, the short delay in his receipt of state court transcripts and the failure of the child support worker to receive a letter in no way prejudiced his status as a litigant or his right of access to the courts. He needed the transcripts because a lawyer, not the court, had imposed an arbitrary deadline. Nothing prevented plaintiff from pursuing his remedies pro se in state court, just as he has pursued this case in this court, and the alleged delay in delivery of the transcript was extremely brief. Similarly, plaintiff's right of access to the courts was in no way prejudiced by any non-delivery of his letter to the child support worker. He was able to communicate with the child support worker via telephone, and his obligations to pay child support remained the same and were unaffected by any mail problems.

The fact that some of plaintiff's mail has been opened before he received it, that a letter was not received by a child custody worker with whom he later had a full discussion via telephone concerning the same matters in the letter, and that he did not receive transcripts in time to send to a lawyer (not a court) by an arbitrary deadline established by the lawyer for the lawyer's own convenience, had no prejudicial effect on any actual court proceedings or on his status as a litigant, so that his access to the courts was not prejudiced in any way. Accordingly, his mail claim is legally frivolous and does not state a claim of violation of constitutional rights upon which relief can be granted under Section 1983.

III.  MERE THREATS AND VERBAL HARASSMENT

Plaintiff's allegations that he was subjected to threats in response to his complaints about his mail are not cognizable under Section 1983 and fail to state a claim upon which relief may be granted because no violation of his constitutional rights occurred. In Robertson v. Plano City, 70 F.3d 21, 24 (5th Cir. 1995), the court noted that "in the Eighth Amendment context, 'mere threatening language or gestures of a custodial officer do not, even if true, amount to constitutional violations.'" Id. (citing McFadden v. Lucas, 713 F.2d 143, 146 (5th Cir. 1983)); Burnette v. Phelps, 621 F. Supp. 1157, 1162 (M.D. La. 1985); see also Johnson v. Glick, 481 F.2d 1028, 1033 n.7 (2d Cir. 1973) abrogated in part on other grounds by Graham v. Connor, 490 U.S. 386, 397 (1989) (the use of

language, no matter how violent, does not constitute a Section 1983 violation); Collins v. Cundy, 603 F.2d 825, 827 (10th Cir. 1979) (verbal harassment consisting of sheriff's threat to "hang" prisoner does not state constitutional deprivation actionable under Section 1983).

"Claims of hurt feelings, humiliation, and other heartfelt, yet objectively trivial indignities, are not of Constitutional moment . . . ." Jackson v. Liberty County, 860 F. Supp. 360, 363 (E.D. Tex. 1994). Thus, for example, the use of a racial epithet in a single isolated context does not give rise to a cause of action for violation of constitutional rights. DeWalt v. Carter, 224 F.3d 607, 612 (7th Cir. 2000); Williams v. Bramer, 180 F.3d 699, 706 (5th Cir.), reh'g denied & opin. clarified, 186 F.3d 633 (5th Cir. 1999); see generally Shabazz v. Cole, 69 F. Supp. 2d 177, 199-201 (D. Mass. 1999) (collecting cases). "[C]itizens do not have a constitutional right to courteous treatment by the police. Verbal harassment and abusive language, while unprofessional and inexcusable, are simply not sufficient to state a constitutional claim under 42 U.S.C. § 1983." Slagel v. Shell Oil Reference., 811 F. Supp. 378, 382 (C.D. Ill. 1993), aff'd, 23 F.3d 410 (7th Cir. 1994) (internal citations omitted).

In this case, plaintiff's allegations of verbal abuse and threats in response to his complaints about the mail do not rise to the level of a constitutional violation, and these allegations fail to state a claim upon which relief may be granted.

## **RECOMMENDATION**

For all of the foregoing reasons, it is **RECOMMENDED** that plaintiff's complaint be **DISMISSED WITH PREJUDICE** as legally frivolous and/or for failure to state a claim under 28 U.S.C. § 1915(e)(2) and 42 U.S.C. § 1997e(c)(1).

A party's failure to file written objections to the proposed findings, conclusions, and recommendations in a magistrate judge's report and recommendation within ten (10) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. Douglass v. United Servs. Auto Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this 20th day of June, 2005.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE